UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALEN AUSTIN GAVIT,  Civil Action No.: 17-13066
  Honorable Judith E. Levy
       Plaintiff,  Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 21, 25]**

Plaintiff Galen Austin Gavit appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his applications for disability and Disability Insurance Benefits (DIB) and Supplemental Security Income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the Court **RECOMMENDS** that:

- Gavit's motion [ECF No. 21] be **DENIED**;

- the Commissioner's motion [ECF No. 25] be **GRANTED**

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence

four of 42 U.S.C. § 405(g).

**I.     BACKGROUND**

   **A.     Gavit's Background and Disability Applications**

Gavit protectively filed applications for DIB and for SSI in October 2012. [ECF No. 11-5, Tr. 592-98, 599-607]. In both applications, Gavit alleged a disability beginning August 12, 2008. [*Id.*] Gavit's claims were heard in November 2014, at which time he amended his alleged onset date of disability to January 7, 2011.[1] [ECF No. 11-2, Tr. 197-250]. In a December 22, 2014 opinion, the ALJ concluded that Gavit was not disabled at step four of the sequential evaluation. [ECF No. 11-3, Tr. 315-40]. Gavit appealed, and in an order dated August 19, 2015, the Appeals Council vacated the decision and remanded the matter for another hearing for the ALJ to consider new evidence that Gavit had submitted with his appeal, namely Exhibits 28F-48F. [ECF No. 11-3, Tr. 345-48].

---

[1] Gavit has filed earlier applications for DIB and SSI benefits on September 24, 2010 and November 28, 2011. [ECF No. 11-2, Tr. 12]. Those applications were initially denied in January 2011 and April 2012, respectively, and Gavit did not appeal. [*Id.*] The ALJ considered the extent to which she could reopen those prior claims and determined that the earliest date on which Gavit could be found to be disabled under the current application was January 7, 2011. [*Id.*] This coincides with Gavit's alleged onset date.

A hearing was held on October 6, 2015, during which Gavit and a vocational expert (VE) testified. [ECF No. 11-2, Tr. 90-196]. Following the hearing, the ALJ sent interrogatories to the VE and Gavit then requested a supplemental hearing. [ECF No. 11-6, Tr. 894-99, 900-04]. Gavit and the VE again testified during the May 10, 2016 supplemental hearing, after which the ALJ found that Gavit had not been under a disability since January 7, 2011, the day after the prior application's final determination. [ECF No. 11-2, Tr. 8-42, 43-89]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [ECF No. 11-2, Tr. 1-5]. Gavit timely filed for judicial review. [ECF No. 1].

**B.     The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or

a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Gavit was not disabled. [ECF No. 11-2, Tr. 27-28]. At the first step, she found that Gavit had not engaged in substantial gainful activity since January 7, 2011, the amended alleged onset date. [ECF No.11-2, Tr. 15]. At the second step, she found that Gavit had the severe impairments of headaches, affective

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

4

disorder, anxiety disorder, hearing loss, cardiac dysrhythmia and hypertension. *Id.* Next, the ALJ concluded that none of Gavit's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [ECF No. 11-2, Tr. 18].

Between the third and fourth steps, the ALJ found that Gavit had the RFC to perform a limited range of medium work that permitted him to:

> lift or carry up to 50 pounds occasionally or up to 25 pounds frequently. He is able to stand or walk for up to six hours of an eight-hour workday, or to sit for up to six hours. He is able to perform work that does not involve climbing ladders or scaffolds or commercial driving. He is able to perform tasks that are routine and predictable, defined as performing the same tasks in the same place each day. The work he can perform involves rare interaction with the public, defined as well less than one-third of the day and occasional interaction with coworkers, defined as up to one third of the day.

[ECF No. 11-2, Tr. 21]. At step four, the ALJ found that Gavit was capable of performing past relevant work as an Assembler, Motor Vehicles as generally and actually performed, and as a Material Handler as performed by Gavit. [*Id.*, Tr. 27]. As such, the ALJ concluded that Gavit had not been under a disability from January 7, 2011 through the date of the decision. [*Id.*, Tr. 28-29].

5

## II.     ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Gavit argues that the Appeals Council issued contradictory notices indicating that a final decision had been made, yet allowed him the ability to submit new evidence.  [ECF No. 21, PageID.2512].  He also argues that the ALJ failed to properly weigh the medical opinions of record and consider the effects of degenerative disk disease and other spine impairments in his RFC analysis.  [ECF No. 21, PageID.2512-22].   Finally, Gavit says that the ALJ made an improper credibility determination.  [ECF No. 21, PageID.2522-26].  For the reasons that follow, the Court

determines that substantial evidence supports the ALJ's conclusions and recommends that the Commissioner's decision be affirmed.

## A.

Gavit argues that the Appeals Council issued contradictory notices on September 6, 2016 and September 7, 2016—first indicating that it had made a final decision, and then purportedly allowing Gavit the opportunity to submit new evidence. [ECF No. 21, PageID.2512]. He argues that this matter should be remanded for clarification and to allow him to submit new evidence. [*Id.*] The Court rejects this argument because Gavit was permitted an opportunity to submit further evidence and argument, but failed to do so.

Following the unfavorable decision by the ALJ on June 26, 2016, Gavit requested that the Appeals Council review the decision and give him additional time to provide further arguments. [ECF No. 11-4, Tr. 589-90]. On September 7, 2016, the Appeals Council granted Gavit time to submit "more evidence or a statement about the facts and the law in this case" before it acted on his case. [ECF No. 11-2, Tr. 6-7]. The Council indicated that, if Gavit failed provide any submissions within 25 days after the September 7 letter, it would "assume that [he did] not want to send us more

information. We will then proceed with our action based on the record we have." *Id.*

Nearly a year later, on September 6, 2017, the Appeals Council denied Gavit's request for review, making the ALJ's June 2016 decision the final decision. [ECF No. 11-2, Tr. 1-5]. Gavit does not allege or show that he submitted any evidence or statements within the 25-day extension period. For these reasons, Gavit's request for a remand for clarification and another opportunity to submit new evidence should be rejected.

**B.**

Gavit next argues that the ALJ did not properly weigh the medical opinions in the record. [ECF No. 21, PageID.2512]. At issue are two consultative psychological reports jointly issued by Robert J. Devers, Psy. D., and Kyle D. Wood, L.L.P., in March 2012 and April 2013. [ECF No. 11-10, 1455-71; ECF No. 11-11, Tr. 1663-68]. Gavit claims that the ALJ ignored Dr. Devers' opinion that "it would be very difficult for the claimant to obtain or maintain gainful employment." [ECF No. 11-10, Tr. 1455-71; ECF No. 11-11, Tr. 1663-68]. Gavit says that the ALJ "intentionally misrepresented" the authorship of the two reports in a purported attempt to limit their weight. [ECF No. 21; PageID.2513]. He alleges that the ALJ "pretended" that both reports were issued by Mr. Wood (and not by Dr.

8

Devers and Wood jointly), and thus did not consider them medical source statements, and afford them proper weight, in formulating the RFC. The Commissioner counters that the ALJ reasonably gave partial weight to the joint opinions of Dr. Devers and Mr. Wood. [ECF No. 25, PageID.2544]. The Commissioner also contends that the ALJ never made a finding as to whether it was Mr. Wood or Dr. Devers who performed the examination and that, regardless, she treated the consultative opinions as being performed by an acceptable medical source. [*Id.*]

An ALJ is required to consider every medical opinion of record. 20 C.F.R. § 404.1527. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The record does not support Gavit's suggestion that the ALJ failed to consider, or afford less weight to, the jointly-signed consultative opinions of Dr. Devers and Mr. Wood in determining the RFC. Gavit had two psychological assessments at Weber & Devers Psychological Services, and both assessments were signed by Dr. Devers and Mr. Wood. [ECF No. 11-10, Tr.1470; ECF No. 11-11, Tr. 1667]. While the ALJ may have

9

improperly identified Mr. Wood as "Dr. Wood" in her analysis, there is no evidence that such a misidentification was anything but a harmless scrivener's error. Indeed, the ALJ's evaluation of the Devers/Wood opinion properly examined the factors listed in 20 C.F.R. § 404.1527(c) for considering a consulting source. *Williams v. Colvin*, No. 4:15CV-00082-HBB, 2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016).

The Section 404.1527(c) factors are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. § 404.1527(c)(2)-(6). But there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015). The Court finds that the ALJ sufficiently considered the Devers/Wood opinions and the record as a whole, and that substantial evidence supports her determination that the Devers/Wood opinions were only entitled to partial weight. [ECF No. 11-2, Tr. 26].

With respect to the first two regulatory factors, Devers/Wood examined Gavit twice, once for each consultative examination; they did not have an ongoing treatment relationship. Concerning the third factor—

10

supportability of the opinion—Devers/Wood opined that Gavit reported difficultly with thinking, processing and feeling dizzy most of the time. [ECF No. 11-10, Tr. 1469; ECF No. 11-11, Tr. 1667]. He also reported problems with depression and anxiety. [*Id.*] Based on this, Devers/Wood concluded that "it would be very difficult for Gavit to obtain or maintain gainful employment." [*Id.*; *see also* ECF No. 11-2, Tr. 26]. The ALJ accepted the diagnoses as an indication that Gavit's mental health impairments were severe; however, she rejected the "bottom line" opinion that Gavit could not engage in work activity. [*Id.*] The ALJ reasoned that during the examinations, Gavit was focused on his arachnoid cyst, although the record indicates that his treating physicians were not. [ECF No. 11-2, Tr. 26; ECF No. 11-10, Tr. 1466-1471; ECF No. 11-11, Tr. 1663-67]. In the medical source statement portion of the April 2012 report, Devers and Wood expressly based their conclusion that Gavit could not work on his self-reports of difficulty with "thinking, processing, and feeling dizzy most of the time. He also reported problems with depression and anxiety symptoms." [ECF No. 11-10, Tr. 1469]. The April 2013 medical source statement uses language and reasoning identical to the April 2012 statement. [ECF No. 11-10, Tr. 1667].

11

Gavit blamed his physical problems on the cyst and Devers/Wood seemed to "uncritically accept" as true Gavit's self-reports, rather than identifying support in the medical record. [ECF No. 11-2, Tr. 26]. The opinions of consultative examiners are not entitled to any particular weight under the regulations. 20 C.F.R. § 416.927(c)(2). Rather, the opinions of consulting examiners like Devers and Wood are afforded weight according to the factors set forth in 20 C.F.R. § 416.917, including whether they are supported by objective findings, consistent with the record as a whole, and the extent of the physician's relationship to the claimant. And there is no requirement that an ALJ explain her reasons for discounting a consulting examiner's opinion. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJ's to give reasons for only treating sources").

The ALJ correctly noted that Devers/Wood's statements that "it would be difficult for [Gavit] to obtain or maintain gainful employment" is not a medical opinion deserving of any special significance, but rather an issued "reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(1), (3), 416.(d)(1), (3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner" including opinions that a claimant is disabled or unable to work). And the evidence that Gavit cites

12

may support Devers/Wood's ultimate conclusion, but "[i]f the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted).

## C.

Gavit next argues that the ALJ erred by failing to consider the effects of his neck and back pain on his RFC. [ECF No. 21, PageID.2519]. The ALJ found that the evidence in the record did not show that Gavit's neck and back pain were severe impairments, but she still incorporated that pain in the RFC. [ECF No. 11-2, Tr. 17]. When an ALJ considers all of a claimant's impairments, both severe and non-severe, any failure at step two to find additional impairments severe does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). The question thus becomes whether Gavit's RFC sufficiently incorporates his neck and back pin. He bears the burden of demonstrating that he requires a more restrictive RFC. *Preslar*, 14 F.3d at 1110 (claimant bears burden during first four steps); *Jordan v. Comm'r of Soc. Sec.*, 548

F.3d 417, 423 (6th Cir. 2008) (claimant bears burden of demonstrating need for more restrictive RFC).

In an attempt to meet his burden, Gavit contends that the ALJ selectively reviewed the record of his physical complaints related to his neck and back pain to conclude that he was capable of performing medium work. According to Gavit, the "actual medical findings," including physical therapy notes, show severe back pain, deficits in his range of motion in his cervical spine, especially lateral flexion and extension, 50-60% deficit in manual muscle testing of both hips, and scoliosis. [ECF No. 21, PageID.2521]. He cites in support January 2016 notes from his physical therapist, Prathima Peachera, DPT. [*Id.*; ECF No. 11-15, Tr. 2352-2415].

But the ALJ did cite medical evidence when explaining her reasoning. [ECF No. 11-2, Tr. 15-17]. She noted that Gavit complained of lumbosacral pain after the 2008 car accident, but that x-rays were negative, and MRIs of his lumbar and cervical spines showed only mild findings. [ECF No. 11-7, Tr. 948; ECF No. 11-8, Tr. 1203-05]. The ALJ cited an April 2013 examination during which Gavit denied any musculoskeletal symptoms, including back, bone, joint or muscle pain; stiffness; weakness; or limited range of motion. [ECF No. 11-11, Tr. 1640]. The ALJ then discussed a November 2014 emergency room visit after Gavit slipped into a ditch.

[ECF No. 11-15, Tr. 2248-49]. An MRI again showed only mild findings, and the examining doctor attributed Gavit's pain mostly to a muscle spasm; he did not believe that the pain came from his spinal cord or a bulging disc. [*Id.*]

The ALJ also considered Gavit's physical therapy records and noted that his pain during his therapy in January 2016 did not exceed a 5/10 [ECF No. 11-15, Tr. 2354-56]. And at a March 2016 emergency room visit during which Gavit complained of back pain after lifting something heavy, he had a full range of motion in his extremities, negative straight leg raising, good extensor hallus longus strength, symmetrical and equal deep tendon reflexes, no midline back pain, and "some" paraspinal tenderness. [ECF No. 11-16, Tr. 2408].

The ALJ thus relied on substantial evidence to find that Gavit's back and neck pain were not severe, and that he had the RFC to perform limited medium work. The physical therapy findings that Gavit cites provides some support for his argument that his limitations are greater than found by the ALJ, but the ALJ's decision must be affirmed because it is supported by substantial evidence. *Cutlip,* 25 F.3d at 284.

**D.**

Last, Gavit argues that the ALJ erred in discounting his credibility based on his mistaken attribution of a large part of his symptoms to an "arachnoid cyst" and because of the ALJ's belief that Gavit had misrepresented his past work. [*Id.*, at PageID.2522-23]. But the ALJ did not evaluate Gavit's "credibility"; instead, she determined that his statements concerning the intensity, persistence and limited effects of his impairments were not entirely consistent with the evidence in the record. [ECF No. 11-2, Tr. 26]. As of March 28, 2016, ALJs are no longer tasked with assessing a claimant's credibility, as SSR 96-7p was superseded by SSR 16-3p, which eliminates use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. *See also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility.").

Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that an ALJ's credibility determinations are given

great weight. *See, e.g., Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018). Thus, an ALJ's subjective symptom evaluation should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Here, Gavit has not proffered a compelling reason to overturn the ALJ's subjective symptom evaluation. In conducting the evaluation, the ALJ noted that Gavit testified at the supplemental hearing that he fell five times in one day while on vacation as a result of his impairments. [ECF No. 11-2, Tr. 26; ECF No. 11-2, Tr. 87-88]. He also testified that he had a history of falling two to three times per week since 2008, yet there were no medical records reflecting that he had discussed the issue of recurrent falling with any of his treating sources. [ECF No. 11-2, Tr. 26; 87-88]. In addition, the ALJ noted that Gavit had a cane with him at the supplemental hearing, yet he has not been prescribed a cane despite his allegations of dizziness and balancing problems. [ECF No. 11-2, Tr. 26, 84-85]. Gavit also testified that he drives despite allegations of headaches, dizziness and heart conditions. [ECF No. 11-2, Tr. 26; ECF No. 11-6, Tr. 784]. Also, in

his function report, Gavit claims that he cannot stand up without falling down, yet there is no evidence showing that he reported this limitation to any treating source or emergency responder. [ECF No. 11-2, Tr. 26; ECF No. 11-6, Tr. 781].

In sum, the Court finds that the ALJ gave sufficient reasons supported by substantial evidence in the record for finding that Gavit's subjective statements were not fully supported by the other evidence in the record. Her decision should be affirmed.

### III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Gavit's Motion for Summary Judgment [ECF No. 21] be **DENIED**, the Commissioner's Motion [ECF No. 25] be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

                                        s/Elizabeth A. Stafford
                                        ELIZABETH A. STAFFORD
Dated: December 7, 2018         United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

18

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

19

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2018.

                                      s/Marlena Williams
                                      MARLENA WILLIAMS
                                      Case Manager